## MONTGOMERY v. NORTHERN PAC. R. CO. et al.

### (Circuit Court, D. Oregon. April 22, 1895.)

### No. 2,165.

1. **BREACH OF WARRANTY—DAMAGES—CONSIDERATION PAID IN BONDS.**
    In an action against a railroad company for breach of warranty **in a** conveyance of land, defendant may show that the consideration paid was unmatured junior bonds of defendant worth less than par, as the measure of damages is the value of the bonds given for the lands, with interest.

2. **SAME—CONVEYANCE BY RAILROAD.**
    Under Act March 3, 1887, § 4, providing that innocent purchasers of land erroneously certified or patented to a railroad company as part of its grant shall be entitled to the land upon making proof of purchase at the proper land office, under rules to be prescribed by the secretary of the interior, such purchasers cannot sue the railroad company for breach of warranty, though the secretary has prescribed no rules by which purchasers can avail themselves of the act, as their title and possession are secure without making proof of purchase until such rules are prescribed.

3. **SAME—ACTION FOR BREACH—PLEADING.**
    In an action by a purchaser of lands from a railroad company for breach of warranty, an answer alleging that under Act March 3, 1887, § 4, plaintiff is entitled to the lands on making proof of purchase at the proper land office, and that under section 5 plaintiff is entitled to purchase the land from the government for $2.50 per acre, is demurrable, where it does not allege that the lands in question belong to the class described in the act.

**4. SAME—DEFENSES—PURCHASE BY PLAINTIFF.**

Objection to several parts of a complaint or answer, constituting a

It is no defense to an action against a railroad company for breach of warranty that plaintiff has purchased the land in question under Act March 3, 1887, § 5, providing that where a railroad company has sold to an innocent purchaser, as part of its grant, lands not conveyed to it, they being for some reason excepted from the operation of the grant, such purchaser may purchase them from the government at the government price.

**5. PLEADING—DEFECTS REACHED BY DEMURRER.**

Objection to several parts of a complaint or answer, constituting a single cause of action or defense, must be taken by motion to strike out, and not by demurrer.

Action by one Montgomery against the Northern Pacific Railroad Company and others for breach of warranty. The plaintiff demurred to defendant's answers.

Raleigh Stott and A. H. Tanner, for plaintiff.

Joseph Simon, for defendants.

BELLINGER, District Judge. This is an action to recover damages for alleged breach of covenants of warranty contained in a deed made by the railroad company of certain lands. It is alleged in the complaint that the plaintiff paid the company $18,789.58, the consideration expressed in the deed; that said deed contained a covenant that the company would warrant and defend the title to the premises conveyed; that in fact it was not the owner of such lands, nor entitled to their possession; and that plaintiff has been evicted therefrom by the United States. The plaintiff prays judgment for said sum of $18,789.58, with interest from April 10, 1876, the date of the conveyance. The company and its receivers answer separately. These answers deny want of title in the company at the time of the conveyance in question, and allege that at such time the defendant company was the owner of the deeded lands, and they deny that the plaintiff has been evicted. They also deny that plaintiff paid $18,789.58 for the lands, and allege the fact to be that plaintiff paid, as the only consideration for the conveyance, bonds of the defendant known as the Jay Cooke series of bonds, which bonds were at the time worth no more than $1,800. For a further defense, it is alleged that the lands conveyed were a part of a grant of lands to the company by the United States to aid in the construction of its line of road; that said grant is one of the grants mentioned in an act of congress subsequently passed to provide for the adjustment of land grants made to aid railroads, and for the forfeiture of unearned lands, approved March 3, 1887; that, by the provisions of this act, the secretary of the interior is authorized and directed to make adjustments of each of the theretofore unadjusted railroad land grants, in accordance with the decisions of the supreme court, and that, if it shall appear that lands have been erroneously certified or patented by the United States for the benefit of any railroad company claiming under a railroad grant, the secretary is directed to demand a relinquishment or reconveyance of the land to the United States, and shall, on failure of compliance with such demand, commence proceedings to cancel all certificates

or patents or other evidence of title held under the said grants; that it is further provided by said act, in effect, that, where there are purchasers in good faith of any of such lands from the companies, such purchasers, or their heirs or assigns, shall be entitled to the lands so purchased, upon making proper proof of the fact of such purchase, at the proper land office, within such time and under such rules as may be prescribed by the secretary of the interior, after the adjustment provided for shall have been had; that, under this act, plaintiff is entitled to the lands in question upon making the proof provided for, whenever the secretary shall adopt rules and regulations therefor, which he has not yet done, and is entitled to become invested with a perfect title to the lands in question from the government of the United States; that the expense incident to such action will not exceed $1,000, which sum is the only loss, injury, or damage that plaintiff has or can suffer by reason of the complaint he makes. For a further answer, it is alleged that, under the provisions of the act of congress of March 3, 1887, it is provided that when any railroad company shall have sold to citizens or persons who have declared their intentions to become such, as part of its grant, lands not conveyed to or for the use of the company, or that are, for any reason, excepted from its grant, such lands being numbered sections prescribed in the grant to the company, and coterminous with the constructed portions of its road, it shall be lawful for the bona fide purchaser thereof from the company to pay the United States for such lands at the ordinary government price, and that thereupon patents shall issue to such person, or his representative, for such lands; that the lands conveyed by the company to plaintiff aggregate 2,952.48 acres; and that, under the provisions just mentioned, plaintiff may secure title thereto from the government by paying $2.50 per acre therefor; and that in no event can plaintiff's damage exceed $7,381.20. For a further answer, it is alleged that plaintiff has availed himself of the provisions of the act in question, and has secured title to certain lots and parcels of said land, which are particularly designated in such separate defense. The plaintiff demurs to each of these separate defenses, and he also "demurs" to that part of the answer in which it is denied that the plaintiff paid for the lands purchased otherwise than with bonds of the company worth only $1,800. This last objection should be made by motion to strike out.

I am of opinion that the fact of payment in bonds not yet due, or actually worth less than par, may be alleged as showing the damage sustained by reason of the failure of title complained of. It is argued that, since the obligation of the company is to pay these bonds at their face, the company will not be permitted to say that, when it took them in payment for land, it received less in money value than their par value. But if such bonds are not yet due, or are subject to the priority of bonds of another series, or are only a part of the bonds of one series, a recovery by plaintiff of damages to the amount of their par value has the effect to compel their payment before maturity, or in disregard of the rights of other lien holders. If these bonds were at the time actually worth but 10

per cent. of their face, it was upon the assumption that the assets of the company, if applied in payment of its obligations in the order in which such obligations were entitled to be discharged, would only pay that much. The debts of the company are the debts of its assets, beyond which, so far as creditors are concerned, there is no liability. It follows that the bondholders of the company cannot compel the present payment in full of bonds not yet matured, or that are subsequent in order of payment, or that belong to a series for the full payment of which the assets of the company are inadequate. The officers of the company have no right to pay off a part of such bonds at their face, to the injury of the rights of other bondholders, and what they cannot do directly they cannot do indirectly. And yet this is what will happen if the plaintiff, having bought lands with these bonds, can now recover as damages their par value, with interest, upon the company's covenant of warranty of title. The plaintiff is entitled to compensation. It is only to this extent that damages are allowed, and the measure of his damages is the property which he exchanged for the land in question with its increment, or its value in money, with interest.

The act of congress of March 3, 1887, provides for two classes of cases,—one where lands erroneously certified or patented to a railroad company, as a part of a grant made to it, have been sold by the company to innocent purchasers; and the other where such company has sold to such a purchaser, as a part of its grant, lands not conveyed to it, being the numbered sections prescribed in the grant, and coterminous with constructed parts of the road, but for some reason excepted from the operation of the grant to the company. In cases belonging to the first class, the purchasers from the company shall be entitled to the land upon making proof of their purchase at the proper land office, under rules to be prescribed by the secretary of the interior. In such cases the government may compel payment by the company of the government price for the land erroneously disposed of, and the right is reserved to the innocent purchaser to recover his purchase money from the company, less the amount such company has paid to the United States. The effect of this is to compel the company to purchase from the government, for the benefit of innocent purchasers, at the government price, lands erroneously conveyed to it as a part of its grant, and subsequently sold by it to such purchasers, if they make application therefor, in which case such purchasers can recover back the purchase money paid to the company, less the amount paid by the company to secure title in the purchasers. In cases of the second class, the lands not having been conveyed or certificated to the company, an innocent qualified purchaser from the latter may purchase the lands from the government at the government price. In the case of Burr v. Greeley (decided in the circuit court of appeals for the Eighth circuit) 3 C. C. A. 357, 52 Fed. 926, it is held that, under this act, the purchaser from a railroad company of lands erroneously patented cannot maintain an action for a breach of warranty while he still retains possession, and has pend-

ing in the land department an application for a patent as a bona fide purchaser. It is clear that a plaintiff cannot have damages on account of his contract of purchase while in the enjoyment of the benefits of that contract. The protection which section 4 of the act of March 3, 1887, extends to him, is because of his contract of purchase from the railroad company. He cannot complain of injury to his rights as a purchaser while the government protects him from such injury.

It appears from the answer that no time has been fixed, nor have any rules been adopted by the secretary of the interior, by which the plaintiff can avail himself of the benefits of a purchaser under the act. It is alleged that whenever the secretary shall prescribe such rules, and fix the time for making proof of the fact of purchase, the plaintiff can perfect his title. But these omissions do not create uncertainty as to the rights of bona fide purchasers. The rights conferred are absolute. The regulations to be prescribed are merely to provide a mode of procedure. Until that is done, a purchaser is not required to make proof of his purchase. His title and possession are secure without it. It does not appear, however, that the lands in question were erroneously patented or certified by the government, and therefore belong to the class provided for in section 4 of the act of March 3, 1887; and this omission is not aided by the allegation that when the secretary of the interior shall prescribe rules and fix the time of proof, etc., the plaintiff can perfect his title. This is a mere conclusion, and is not warranted by what is alleged.

The second separate defense alleges that the plaintiff may, if he so elects, bring himself within the provisions of section 5 of the act, and become the purchaser of the lands in question at the rate of $2.50 per acre. But, if such right of purchase is otherwise a good defense, the right under section 5 of the act is limited to such lands as are within the numbered sections prescribed in the grant to the company, and are coterminous with the constructed parts of the road. It is not alleged that these are such lands.

The answer contains a still further separate defense, in which it is alleged that the plaintiff has in fact availed himself of the provisions of the act of March 3, 1887, and has perfected his title thereunder to a number of parcels of the land in question, which parcels are particularly described. I assume from this that the plaintiff has availed himself of his right to purchase at government price certain portions of this land from the government, under the provisions of section 5 of the act of March 3, 1887. There can be no intendment in favor of the pleader that the title thus perfected is under section 4. Moreover, such a defense, if made, would be inconsistent with the allegation in the first separate defense to the effect that the secretary of the interior has not yet prescribed the rules under which purchasers can avail themselves of the right to have their titles perfected by making proof of purchase at the proper land office. The purchase by the plaintiff of these lands from the government, under section 5 of the act, will not relieve

the company from its obligation to repay the purchase price received by it from him for such lands. It is not the intention of congress that the company shall retain any part of the purchase price of lands erroneously sold by it. Such a policy would offer inducements to land-grant companies to sell lands not within their grants, and thus perpetrate frauds upon innocent purchasers. The purchaser under section 5 of the act of March 3, 1887, is required to pay "the ordinary government price for like lands" in order to secure title to the lands erroneously sold to him by the company. It does not become a railroad company in such a case, where it has received from the purchaser more than "the ordinary government price for like lands," to try to relieve itself from responsibility by paying the amount of such price to its grantee, and thus take advantage of its own wrong or mistake to keep the difference between what it received for land it had no right to sell and what its grantee had to pay the government to secure his title. Whether the company has sold for more or less than the government price, in cases within section 5 of the act, the measure of its liability is the same,—the amount it has received as the purchase price of the land it attempted to sell, the measure of damages upon a covenant of warranty on failure of title. When the lands purchased have been patented or certificated by the government to the company, the act of congress validates the purchase. Where there has been neither certificate nor patent, the case is different. No title is recognized in the purchaser. The right secured in the latter case is merely a right to purchase. In the one case the government assumes the obligation of the grantor company; looks to such company for the purchase price in an amount equal to the government price of similar lands, without reference to the amount for which the company has sold them. It confirms the sale already made, upon the consideration, so far as the purchaser is concerned, already paid, and the patent which it issues relates back to the date of the original certification or patent. There is no failure of title, but an affirmance of title. In the other case there is a failure of title, with a right of purchase upon a new and full consideration to be paid by the purchaser. In such case there is a failure of title under the conveyance from the company to the purchaser, and this is proof of eviction, which cannot be avoided by the fact of a subsequent purchase by the grantee from the owner.

The demurrer to the second and third separate defenses is sustained. As to all other parts of the answer, it is overruled.

The first separate defense is demurrable, but, instead of demurring to such defense as a whole, defendant has specially demurred to each of five of the six paragraphs constituting such defense. Objection to several parts of a complaint or answer constituting a single cause of action or defense must be made by motion to strike out.